BECKETT ET AL. V. REGAN.

**1. EXECUTION OF DIFFERENT NOTES WITH DIFFERENT SURETIES.**

Where one or more persons or principals are owing a certain amount to another and to satisfy the claim, the debtors give to their creditors two notes signed by themselves, each for a different amount, and each with different sureties; *Held*, that the giving of the two notes does not make "one and the same transaction" so as to make the sureties on the one note in any way liable to the sureties on the other, as a cosurety or otherwise.

**2. WHO ARE COSURETIES.**

Those bound for the same thing though by different instruments at different times and without one another's knowledge, are cosureties—not so, where the obligations are for wholly distinct things, though arisen from the same principal indebtedness.

ERROR to the Court of Common Pleas of Hamilton County.

SMITH, J.

Substantitally the error assigned in this case is, that the court of common pleas erred in sustaining a demurrer to an answer filed by Mr. Mason, one of the defendants in the original action, and in rendering a judgment for the amount sued for, against her and her codefendants.

The petition of John Regan was filed against Beckett & Healy, as parrtners under the firm name of The Central Transfer Co., Mary A. Mc Fee and Catharine Mason. It averred that he was the owner and holder of a promissory note (of which a copy was set out), dated April 15, 1891, made by the Central Transfer company, and Beckett & Healy, calling for $900, payable to Regan two years after date, with 6 per cent. interest payable annually. It avers that Mary A. McFee and Catharine Mason, before the note was accepted by the plaintiff, and as a condition upon which the note would be accepted by him, signed their respective names on the back thereof. That due notice was served upon them of the nonpayment of the note, and demand made upon them for its payment. That the whole amount of said note with interest is due plaintiffs, and he asks a judgment against defendants for the full amount thereof.

The answer of Mrs. Mason, the demurrer to which was sustained, was in substance as follows: "She admits that the note sued was made as stated, and avers that it was indorsed by Mrs. McFee and herself as accommodation sureties, and without any consideration. That at the same time and place the note sued upon was made by the Central Transfer company, and by Beckett & Healy, that the same makers executed and delivered to Regan their note for the sum of $1,000, payable in one year after its date; that said note was indorsed by her codefendant, Mary McFee; that all of the parties of said two notes knew at the time of the making thereof, that both were made and given as part of the consideration price or purchase from said Regan of the business and property of the Central Transfer company; and that the said Regan knew and agreed that both said notes were so indorsed by said Mary A. McFee as to the

$1,000 note, and by said Mary A. McFee and Catharine Mason as accommodation sureties of the note sued on, and that both indorsements on both notes, were in fact, and intended to be part of the same transaction as sureties for the Central Transfer company, for the benefit and use of its creditors, John Regan, the seller, as aforesaid. That notwithstanding all this, the said Regan extended the time for the payment to the Transfer company, of the said $1,000 note when it became due, and instead of demanding payment and collecting said note when due, he extended the time of payment to the makers and indorsers thereof, to the defendants' great detriment and injury if the action against her on this $900 note is maintained. That said extension of the time of payment of the $1,000 note was for a valuable consideration, and by the taking of a new note from the Transfer company for $1,000 payable in six months from April 18, 1892, payable to Regan and also indorsed by Mary A. McFee, and by surrendering up the original note which he avers could have been then collected from the parties thereto, but who have since become insolvent. Wherefore she prays to be discharged, etc.

Was the demurrer to this answer well taken? The simple question presented is, whether on the allegations of this answer, the contract as to the extension of the payment of the $1,000 note, operated, in whole or in part, to discharge the liability of Mrs. Mason as the surety upon the other note for $900.

We are of the opinion that it did not. So far as we can see, there was no such relation of Mrs. Mason to the makers or sureties on the $1,000 note, or to Regan, the payee, as gave to her any interest or concern therein, and it could make no legal difference to her whether the note was paid or not. In no event could she be called upon to pay any part of it; and if it was paid by a surety, that surety would not be entitled to look to her as a cosurety for contribution, nor in any event can we see that she would be entitled to look to the surety or sureties on the $1,000 note for contribution in case she had been compelled to pay the $900 note. Why then should it be a question of any interest to her, whether the surety on that $1,000 note was released or not?

There certainly are cases where the makers of distinct obligations have an intimate relation with each other, and where the makers or sureties on one of the obligations are interested in the disposition made of the other, or in the release or discharge of one or more of the principals or sureties on the other or others. Thus, if several persons become the sureties of a person chosen to fill an office or position, and agree and bind themselves by several obligations that such officer will faithfully perform the duties of his office, as if A. B. etc., bind themselves by a bond in the penal sum of $5,000, and D., E. and F. bind themselves by another bond in the sum of $10,000; the conditions of each bond being the same, in such case they are all cosureties with each other, and occupy that relation to each other, with all of its pivileges and liabilities, and if the makers of one of the bonds are compelled to answer for the default of their principal, they can compel contribution from the obligors on the other bond of a proportionate share of the amount paid. And it follows from this, that if the obligee of one of the bonds, should in any manner release the makers, or one of them, from liability thereon to him this would certainly, to some extent, at least, discharge the makers of the other bond. But this is on the ground that there is a common liability for the same specific default. This is the holding in a leading case on the subject reported in 2 B. & P., 270.

Or if one person, as in the case in 3 Bligh, 275 (House of Lords Reports), holds a specific claim against another, as in that case for £8,000, and he should arrange with his debtor, who had become a bankrupt, that as collateral security for such debt, he would take four notes of £2,000 each, said notes being made by different persons—he to collect dividends on the original claim from the bankrupt's estate, here the makers of the four collateral notes are cosureties with each other. In such case the holder of the collateral notes can not release any maker of one of them, or change his status by a new contract, without at once affecting the makers of the other notes, and they will be discharged in whole or in part as the case may be. But the reason for this is that all of them are interested in the payment of the same original debt, and they are cosureties for the payment of the same to the extent that they have bound themselves by those several obligations. If any sum had been collected from the bankrupt the principal debtor or his estate it is clear that it enures to the benefit of the makers of the collateral notes in proportion to the amounts for which they have bound themselves. And if the makers of one of the collateral notes had paid more than the makers of the others, or more than their proportion, the right to have contribution would exist.

But it seems to us that those cases are wholly and essentially different from that before the court, which is one where one or more persons or principals are owing a certain amount to another and to satisfy the claim the debtors give to their creditor two notes signed by themselves, each for a different amount and with different sureties. It may be that the debt for which the two notes were given was for the purchase price of a farm or of a stock of goods, but in our judgment this does not make in such case, the giving of the two notes "one and the same transaction" in the sense in which that language is used in the books, so as to make the sureties on the one, in any way liable to the surety on the other, as a cosurety or otherwise. And this is so, even if the sureties on the two notes knew what they were given for, and they are executed at the same time. We think that the claim that they are cosureties in such case is wholly opposed to the common understanding of lawyers and business men and the adoption of such a rule would be open to grave objections. We see no adudged case among the many cited by the counsel for plaintiff in error which supports such a claim. The case in 73 Va., 121, relied upon by counsel for plaintiff in error, we think states the law correctly in the third paragraph of the syllabus thus: "Cosureties—Who are—Those bound for the same thing though by different instruments at different times and without one another's knowledge, are cosureties—Not so, where the obligations are for wholly distinct things, though arisen from the same principal indebtedness." Here the sureties were not bound for the same thing, but for wholly distinct things, which however arose from the same principal indebtedness.

These being our views, the judgment of the common pleas will be affirmed.

*Wm. G. Williams*, for Plaintiff in Error.

*Wm. H. Jones*, for Defendant in Error.